## In re Anonymous No. 70 D.B. 89

Disciplinary Board Docket no. 70 D.B. 89.

*Hearing Committee,* February 19, 1990—This case involves the allegation that the respondent neglected client's case.

Respondent contends there was no harm to client's position and his strategy was to minimize the client's expenditure of funds on a case involving limited recovery.

The issue is whether respondent's failure to return phone calls, to honor telephone appointments and to otherwise communicate with the client and actively pursue client's case during a period of time rises to the level of neglect required under rule 6-101(A)(3) of the Code of Professional Responsibility.

The hearing committee concludes that respondent violated Rule 6-101(A)(3) and recommends that respondent receive a private informal admonition.

## Statement of Case

On August 11, 1983, [A] passed away survived by a daughter, [B], and a son, [C] (the complainant). Several days prior to [A's] death, her daughter presented a signature card to her mother's bank enabling her to remove $38,000 from her mother's account and thereafter place the funds in a new account titled jointly with the daughter. One day after her mother's death, [B] cashed the certificate and deposited the proceeds into an account in her own name.

Complainant, who resides in California, initially retained the firm of [D] which, after a period of over one year, finally filed a complaint against [B]. Dissatisfied with the representation, complainant contacted respondent who agreed to undertake the case late in January 1985, and an hourly fee arrangement was established.

Initially, respondent moved quickly, filing a petition and complaint. Over the course of the next 17 months the case progressed and communication existed between the parties, although the complainant was not completely satisfied with the speed of the case and how the case was being handled.

No further action was taken by the respondent on the case from the latter part of August 1986, until respondent advised complainant of his intent to withdraw from the case by letter of May 4, 1987. During this interval, respondent failed to honor three telephone appointments and to answer or return 23 long-distance telephone calls from the complainant.

In January 1987, complainant sought the assistance of a California attorney who telephoned respondent and obtained a written status report of the case which was transmitted to the complainant.

Respondent's withdrawal was subsequently approved by court order dated October 9, 1987.

It is alleged that Disciplinary Rule 6-101(A)(3) was violated which forbids an attorney from neglecting a legal matter entrusted to him.

## Findings of Fact

(1) On August 11, 1983, [A] passed away survived by a daughter, [B], and a son, [C] (complainant).

(2) Several days before [A's] death, [B] presented a signature card to [E] Bank enabling her to deposit a matured $38,000 certificate of deposit in a newly credited CD in joint names with the right of survivorship.

(3) On August 12, 1983, one day after the death of her mother, [B] cashed the certificate of deposit and deposited it in an account in her own name.

(4) [B] and complainant were named co-executors of their mother's estate.

(5) [B] retained [F], Esq., to represent the estate and her personally.

(6) Complainant retained the firm of [D] to represent him in the fall of 1983.

(7) On January 23, 1985, a complaint in equity was filed by [D] alleging wrongful appropriation of funds by [B].

(8) On January 30, 1985, [F] filed an answer denying the improprieties.

(9) During the end of January 1985, complainant discharged the [D] firm and retained [respondent], Esq. and entered into an hourly fee agreement with him.

(10) On February 13, 1985, respondent filed a petition to institute suit on behalf of the estate which was granted by court order dated March 7, 1985.

456

(11) On March 21, 1985, respondent filed a complaint "at law."

(12) On March 31, 1985, respondent issued notices of deposition to [B] and the records keeper of [E] Bank and served each along with a subpoena duces tecum.

(13) On April 1, 1985, respondent provided complainant with a copy of [B's] first and final account and amicable distribution and release documents.

(14) Complainant objected to attorney [F's] proposed first and final account on numerous occasions and expressing, among other things: (a) his desire to be reimbursed for $877.91 he personally expended on behalf of the estate; (b) his objection to the estate payment of a $350 doctor bill which should have been paid by insurance; (c) his desire for copies of all bills, statements, receipts, invoices, canceled checks, etc.

(15) In April 1985, [F] filed preliminary objections to complaint and a motion for protective order to preclude the deposition of [B].

(16) On April 25, 1985, respondent obtained bank records from [E] Bank.

(17) On April 17, 1985, respondent filed petition to remove [F] as estate counsel, which was answered by [F].

(18) On April 24, 1985, a first and final account was filed by [F].

(19) On May 24, 1985, exceptions were filed by respondent.

(20) On August 1, 1985, a praecipe was filed against [E] Bank by respondent to toll the statute of limitations.

(21) On August 23, 1985, an auditor was appointed by the court and a hearing was scheduled.

(22) Without complainant's approval, respondent capitulated on issues of the $350 doctor bill and the

$877.91 claim for reimbursement believing that it would be too expensive for complainant to travel from California to appear at the hearing.

(23) On December 10, 1985, the auditor filed his report denying proposed distribution which was appealed by attorney [F].

(24) On April 18, 1986, the court dismissed the preliminary objections and required respondent to file an amended complaint and ordered other relief to consolidate the matters at issue.

(25) On May 14, 1986, respondent filed an amended complaint.

(26) On July 14, 1986, service of amended complaint was accepted by attorney [F].

(27) On August 19, 1986, respondent sent a letter to [F] asking him to answer the amended complaint and cooperate to obtain bank account numbers and to schedule [B's] deposition. (28) On September 18, 1986, [F] filed an answer to amended complaint.

(29) Complainant placed numerous calls to respondent from the inception of representation through August 1986 asking for status reports and suggesting what action respondent should be taking in regard to the case.

(30) Although not all telephone calls were returned and suggestions followed from January 1985 to August 1986, adequate communication existed and the case was pursued by respondent.

(31) The last activity on the case by respondent was respondent's letter to [F] of August 19, 1986.

(32) During the months of September through December 1986, complainant placed 17 long-distance telephone calls to respondent which were unanswered and not returned.

(33) Respondent failed to honor telephone appointments scheduled for October 23, 1986 and

November 12, 1986, and failed to respond to a letter of November 26, 1986, requesting a status report.

(34) In January 1987, complainant contacted a California attorney who telephoned respondent and obtained from respondent a written status report which was transmitted to complainant.

(35) Respondent again failed to answer or return six more long-distance telephone calls in April 1987, failed to honor a telephone appointment on April 28, 1987, and failed to respond to complainant's letter of March 2, 1987.

(36) On May 4, 1987, respondent advised complainant of his intent to withdraw as counsel.

(37) Over complainant's objection, respondent filed a petition to withdraw which was ultimately approved by the court October 9, 1987.

(38) Respondent was paid $2,195 in fees by complainant during the course of representation.

(39) Respondent was admitted to practice in October 1974 and maintains an office in [   ], Pennsylvania.

(40) Respondent is a member of [   ] County Bar and is active in bar association and community activities.

(41) Respondent has been cooperative once advised of disciplinary complaint.

(42) Respondent has no history of previous discipline.

(43) Respondent has been charged only with neglect.

(44) There has been little loss to complainant.

(45) The complainant was a client of difficult personality and character.

(46) Respondent experienced an extremely heavy workload during the period in question and a heavy fire loss to his office building making it difficult to actively pursue complainant's case.

## Discussion

This case involves the allegation that the respondent was guilty of violating D.R. 6-101(A)(3) which prohibits an attorney from neglecting a legal matter entrusted to him.

Although the complainant may have been dissatisfied with respondent's representation and lack of communication from January 1985 through August 1986, there does appear to be adequate progress in the case and communication between the parties during this period. However, from the end of August 1986 until May 4, 1987, when respondent notified complainant of his intent to withdraw as complainant's counsel, respondent took no action to pursue complainant's case. During the period of inactivity which covered approximately nine months, respondent failed to answer or return 23 long-distance telephone calls, honor three telephone appointments, and reply to at least two letters from the complainant.

· Respondent has maintained that he was attempting to minimize the cost to the complainant in a case of limited recovery, that his office was disrupted by a fire which destroyed many of his files, and that the time period in question was particularly heavy. The relationship between respondent and complainant appeared to gradually deteriorate as the complainant continually called respondent and made suggestions and demands upon his time. Nevertheless, the distractions do not excuse respondent of his inattention to the case and failure to communicate with his client.

For the respondent's conduct to be considered a violation of D.R. 6-101(A)(3), prohibiting an attorney from neglecting a legal matter entrusted to him, we must first define "neglect" as it is or was intended by the Rules. In other words, does the

alleged "neglect" rise to the level of an ethical violation contemplated in D.R. 6-101(A)(3)?

The case of *In re Anonymous No. 24 D.B. 80,* 20 D.&C. 3d 214 (1981), the board defined neglect to include conduct falling within one of the following three categories:

"(1) several instances of neglect which happen during the same general period of time, which evidence a pattern of neglect and which result in a loss to the client, (2) an instance of neglect and resultant loss to the client which was allowed to occur by a lawyer who had been repeatedly reminded or warned by the client or the client's agent against the same and before the same occurred or who had been reminded or warned against the same by authorities such as disciplinary counsel and before the same occurred, or (3) an instance of neglect resulting in a loss to the client and built upon a prior history or record of neglect resulting in a prior loss to a client and involving the same lawyer." 20 D.&C. 3d at 221-2.

While the committee believes this is a close case, after much deliberation we conclude that at least the first category applies to this case.

One of the complicating factors in the decision is to what extent client loss is required. In the above case, the board stated that client loss is an important factor in all of the above three categories because "until such loss occurs, the client has sufficient remedy in removing the case or matter from the lawyer involved and taking it to another lawyer." 20 D.&C. 3d at 222. Petitioner has argued that the cost of the long-distance telephone calls, the fees paid to the California attorney, and the delay in prosecuting the case constitute loss, to the extent loss is required as an element of "neglect." While both sides argued

whether a loss must be established, the board determined that at least a minimal loss was established.

Although most cases imposing discipline for "neglect" involve a period of years, in at least one case, a private reprimand was issued for failure to issue a title policy after being repeatedly contacted by clients, their successor counsel and the realtor for a period of approximately four months. *In re Anonymous No. 76 D.B. 86.* Neglect involves indifference and a consistent failure to carry out the obligations which a lawyer has assumed to his client or a conscious disregard for the responsibility owed the client.

We are satisfied that respondent's inattention to the case and lack of communication with his client for a period of approximately nine months falls within the meaning "neglect" as it is defined under D.R. 6-101(A)(3). Having determined that a violation has occurred, we must now decide the type of discipline to be imposed.

There have been a number of factors which have been considered in the past to ameliorate the gravity of a violation of the Disciplinary Rules. Many of the mitigating circumstances were apparent and present in this proceeding.

The complainant, who is now an attorney, repeatedly contacted respondent for status reports and provided advice or suggestions on what respondent should be doing to further the case. Respondent did not always return the calls nor did he always follow complainant's suggestions, but the case proceeded until August 1986.

In the months that followed, the demands of respondent's practice became quite heavy and complainant's many telephone slips fell to the bottom of the pile. Respondent acknowledges that he should have withdrawn his appearance earlier, particularly

after he concluded that complainant was a particularly "overpowering" client as expressed in his letter of May 4, 1987.

However, to the extent complainant was dissatisfied with respondent's representation or communication, he also could have replaced respondent with other counsel, and as late as the summer of 1987 resisted respondent's petition to withdraw as his attorney. For the reasons stated herein and in the findings of fact, the hearing committee determines that the form of discipline recommended below is appropriate.

### Conclusion of Law

Respondent did neglect said legal matter entrusted to him by complainant in violation of D.R. 6-101(A)(3).

### Recommended Disposition of Case

The hearing committee recommends that the respondent receive a private informal admonition.

### ORDER

TUMOLO, *Chairman*—And now, April 5, 1990, upon consideration of the report and recommendation of Hearing Committee [ ] filed February 22, 1990; it is hereby ordered and decreed, that the said [respondent] of [ ] County, be subjected to an informal admonition by disciplinary counsel as provided in Rule 204(a)(6) of the Pennsylvania Rules of Disciplinary Enforcement. Costs are to be paid by respondent.